FULBRIGHT & JAWORSKI L.L.P.
Charles D. Schmerler
Mark A. Robertson
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
cschmerler@fulbright.com
mrobertson@fulbright.com

Of Counsel:
Andrius R. Kontrimas
Fulbright & Jaworski L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (212) 651-5246
akontrimas@fulbright.com

*Attorneys for Defendant Knoedler Gallery, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIERRE LAGRANGE and G&S TRUSTEES LIMITED,<br><br>*Plaintiffs*,<br><br>-against-<br><br>KNOEDLER GALLERY, LLC, d/b/a KNOEDLER & COMPANY, and ANN FREEDMAN<br><br>*Defendants*. | 11 Civ. 8757 (PGG)<br><br>**DECLARATION OF MICHAEL A. HAMMER IN OPPOSITION TO APPLICATION FOR TRO AND PRELIMINARY INJUNCTION** |

1. My name is Michael A. Hammer. I am the sole Manager of Defendant Knoedler Gallery, LLC ("Knoedler"). I make this declaration on personal knowledge in support of Knoedler's opposition to the plaintiffs' application for a temporary restraining order and preliminary injunction.

2. Knoedler was founded in 1846 by Michael Knoedler. The gallery has operated in New York continuously since 1846, and has represented a large roster of some of the great masters of 20th century American painting. Among those artists are Alexander Calder, Frank Stella, Richard Diebenkorn, Robert Motherwell, Helen Frankenthaler, Nancy Graves, Michael David, Glenn Goldberg and Donald Sultan and the estates of David Smith, Adolph Gottlieb, Richard Poussette-Dart and Herbert Ferber. In 1971, Knoedler was purchased by my grandfather, Dr. Armand Hammer. Prior to that time, in 1928, my grandfather founded Hammer Galleries which is still in operation in Manhattan today. He also founded Occidental Petroleum and in his time was considered one of America's leading industrialists and philanthropists. My grandfather amassed a significant collection of art, and my family since has been directly responsible for the operations of both the Knoedler Gallery and the Hammer Galleries. For three generations members of my family have been devoted patrons of the arts in this country including the founding of The Armand Hammer Museum of Art and Cultural Center in Los Angeles of which I am Chairman Emeritus.

3. Although the plaintiffs assert that the closing of Knoedler was "sudden and 'stunning,'" the decision to close Knoedler has been under consideration for about a year. In 2009, Knoedler incurred an operating loss of approximately $2.3 million. The 2010 operating loss was approximately $1.6 million. As a result, I began asking the key employees of Knoedler to determine how to cut costs and to determine how Knoedler could be operated profitably. It was determined that it would be difficult to operate Knoedler profitably in the upper east side townhouse where Knoedler had been conducting business because the townhouse is expensive to maintain and operate. As a result, I decided that Knoedler should sell the townhouse in order to lower operating costs and I engaged the services of the senior vice president of Sotheby's

International Realty in New York City to professionally market the townhouse for Knoedler. . Knoedler sold the townhouse in February of 2011. Although the townhouse was offered for sale during a depressed real estate market in New York City, I understand that the price Knoedler received for the townhouse was the second highest sales price ever paid for a townhouse in Manhattan as of the time of the sale. As a part of the sale price, I was able to negotiate one year of free rent in the townhouse for Knoedler until February 14, 2012.

4. After the sale, I re-evaluated whether Knoedler could be operated profitably under the circumstances, including moving to a smaller, less expensive location. After reviewing the alternatives and further discussions with key staff members regarding financial projections and market outlook, I made a well considered and difficult decision to close the business and expect to realize significant savings in ongoing expenses.

5. As an integral part of the process of commencing the winding down of Knoedler, Knoedler has hired Richard Lynch who is an experienced art dealer who served as the director of Hammer Galleries for more than 40 years. He is a highly respected art dealer. Knoedler is keeping key staff either as employees or as consultants to assist in the winding down of the business. The winding down plan for Knoedler is to attempt to maximize the value of Knoedler's remaining assets. Mr. Lynch's instructions are to sell Knoedler's inventory of art at the best possible prices in a deliberative manner. To this end, a comprehensive inventory list has been prepared and numerous options for placing the inventory, either through other galleries, agents, or auction houses are still under consideration. This has been an ongoing process for the last few months. To the best of my knowledge, neither Mr. Lynch nor any of the employees and consultants who are assisting in the winding down of Knoedler's affairs have ever been accused of any dishonesty. No grounds exist to contend, as plaintiffs do, that present management of

Knoedler ever has been remotely involved in any fraud or mismanagement of the business. Further. to assert that I or my family would be involved in some scheme to divert revenue and assets from a gallery that we have been involved with for 40 years is preposterous and is false.

6. Knoedler continues to have warehouse space where it continues to store works of art and it will continue to have warehouse space after its lease on the townhouse expires. I have contemplated acquiring a small space to display the art, but no decision has been made about whether to rent any space or what space to rent. This is an ongoing process and all commercially viable alternatives are being carefully explored and considered.

7. Since the sale of the Knoedler building, no disbursements have been made of the income from the sale of the building other than disbursements that have been in the regular course of business (including taxes. expenses in the regular course of business. payroll. insurance costs, utilities) and no plans exist to make any other disbursements or payments other than in the ordinary course of a business commencing an orderly liquidation. No dividends have been made and no major assets have been acquired since the time of the sale of the building in February of this year.

8. I am working with respected and experienced counsel on the winding down of the business. I do not plan to transfer any assets in any way that would or could constitute a fraudulent transfer.

9. I asked the employees of Knoedler to check the records to see if Knoedler sold the painting at issue in the lawsuit to either or both plaintiffs. Knoedler did not. Instead. the records show that Knoedler sold the painting to a dealer in California named Jaime Frankfurt and Knoedler was paid by wire transfer by the order of Jaime Frankfurt LLC. I also asked the

employees of Knoedler to check the records of Knoedler to see if Knoedler had ever sold any work of art to either plaintiff. Knoedler did not.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 6, 2011.

Michael A. Hammer

**CERTIFICATE OF SERVICE**

I hereby certify that plaintiffs' counsel were served by the filing of the foregoing instrument on ECF on December 6, 2011. A true and correct copy of the above and foregoing instrument was served to the following by e-mail who is believed to be Defendant Ann Freedman's counsel on December 6, 2011:

Ronald D. Spencer
Gary Sesser
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
spencer@clm.com
sesser@clm.com

Mark A. Robertson