UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PIERRE LAGRANGE and G&S TRUSTEES LIMITED,

    Plaintiffs,

-against-

KNOEDLER GALLERY, LLC d/b/a, KNOEDLER & COMPANY, and ANN FREEDMAN

    Defendants.

11-CV-8757 (PGG)
ECF CASE

## DECLARATION OF E.A. CARMEAN, JR.

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.  I am an adult citizen of the United States, and except for those matters stated on information and belief, which I believe to be true, I have personal knowledge of the facts stated herein, and, if called as a witness, I could and would competently testify thereto.

2.  I have known Eugene V. Thaw since the early 1970s while doing research on the work of Jackson Pollock. Further, in the 1980s, as director of the Modern Art Museum of Fort Worth, I worked directly with Mr. Thaw in that museum's acquisition of 18 works by Jackson Pollock from the Pollock-Krasner Foundation.

3.  Sometime before September 2005, I met with Mr. Thaw regarding two paintings I believed, and still have every reason to believe, to be by Jackson Pollock. From years of doing research on, writing about, and as curator/director acquiring the art of Jackson Pollock, I consider myself most familiar with Pollock's body of work. I am aware that Mr. Thaw received from Knoedler transparencies of these paintings to review. To the best of my recollection, one of those paintings is the subject of the above-captioned lawsuit.

4. From our initial conversations during this period, Mr. Thaw made it clear to me that he was not going to render an opinion of authenticity because the Pollock-Krasner Foundation was no longer rendering such opinions. By letter dated September 20, 2005, Mr. Thaw informed me of his view that the works "make an intriguing problem in connoisseurship," that he was unable to give a "definitive opinion" regarding the works and therefore was "unwilling to undertake publishing them," and that he would "like to keep the photographs a bit longer to study them some more." In that letter, Mr. Thaw also said, "Sorry to be of so little help." Mr. Thaw never said to me, in his letter or otherwise, that he believed the paintings to be inauthentic. To the contrary, he explicitly stated that he would not render an opinion regarding authenticity.

5. To the best of my recollection, I met with Mr. Thaw again in 2007 and showed him transparencies of the same two paintings that we had discussed in 2005. Mr. Thaw never said to me, in this meeting or otherwise, that he believed the paintings to be inauthentic. To the contrary, during the 2007 conversations, again Mr. Thaw did not give any opinion concerning the authenticity of the paintings. Had Mr. Thaw done so, I would have communicated any such opinion to Ms. Freedman.

6. Both in September 2005 and again in 2007, I conveyed to Ann Freedman that Mr. Thaw was unable to give any opinion concerning the authenticity of the paintings. Because Mr. Thaw never expressed an opinion to me that the paintings were inauthentic, at no point have I ever told Ms. Freedman that Mr. Thaw rendered such an opinion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of December, 2011, at Washington, D.C.

_____
E.A. Carmean, Jr.